IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER KEATON, | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | NO. 11-cv-07225-PD |
| LOUIS FOLINO, et al | : | |
| Respondents | : | |

**MEMORANDUM**

Richard A. Lloret                                                                                                             June 15, 2017
U.S. Magistrate Judge

## I.     Introduction

To resolve a potential conflict of interest issue that has arisen between the petitioner and his long-time attorneys, I must assess the facts that generated the potential conflict. Many of those facts are subject to claims of privilege. Before I can assess the relevant facts, I must resolve the claims of privilege. As a first step in doing so, I will order the petitioner's counsel to create and file under seal a privilege log. This memorandum explains my reasoning.

## II.     The Facts and Procedural History

By two orders, dated April 12, 2017 and April 27, 2017, I asked the parties to address a number of questions I had about the petitioner's fifth claim. The fifth claim alleges that the petitioner's trial counsel was ineffective for failing to locate and hire a pathologist to rebut the medical examiner's determination of time and manner of death. The petitioner asserts that the claim is viable, despite the fact that he did not properly raise the claim in state court, because it involves proof of his "actual innocence." Doc. 29, p. 65. Such a claim may avoid the ordinary rule of procedural default, and be considered on its merits, if it is of sufficient gravity and credibility. *See Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991), *House v. Bell*, 547 U.S. 518, 571 (2006) (Roberts, J., dissenting), *McQuiggan v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1932 (2013).

The petitioner submitted an expert report by Dr. Jonathan L. Arden as part of his habeas petition, but admits he did not submit this report during the state's PCRA proceedings. The expert report challenges the medical examiner's determination of the time of death and the determination that the death was a homicide. Many of the questions in my orders were devoted to determining when the petitioner and his counsel became aware of the information contained in the expert report, and why the petitioner and his counsel were prevented from submitting such a report during the PCRA hearing.

"To invoke the miscarriage of justice exception to AEDPA's statute of limitations" the "petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). Unexplained delay in asserting new evidence of actual innocence is a factor I may consider when assessing the nature and credibility of the evidence of actual innocence proffered by a petitioner. *Id.* at 1935.

In a motion to appoint independent counsel to advise Mr. Keaton (Doc. No. 80), counsel for the petitioner have advised me that answering the questions I posed in my two orders would require them to violate client confidences and the attorney-client privilege. The petitioner's counsel also stated that they have a potential conflict of interest with their client. Counsel for Mr. Keaton represented him in the PCRA proceedings in state court. Counsel asserted that the petitioner may have a viable claim that counsel were ineffective in the PCRA hearing, and that given the divergence in interest it would not be appropriate for counsel to advise the petitioner whether or not

to pursue such a claim. Doc. No. 80, at 2-3. Counsel has moved for appointment of independent, supplemental counsel to advise Mr. Keaton about what to do. *Id.*

Counsel do not spell out the nature or detail of the underlying ineffectiveness claim that causes the alleged conflict. Counsel wrote that, "[t]he Court's questions appear to address the default question in a manner that implicates undersigned counsel's state post-conviction performance. The Court's questions thus implicate *Martinez v. Ryan*, 566 U.S. 1 (2012), which Petitioner has not previously relied upon to excuse any purported default." Doc. No. 80, at 2.

While it is doubtful that questions, as such, can implicate anything,[1] the facts surrounding Dr. Adler's report may implicate such a *Martinez* claim, or not. Those facts have not been disclosed. They lie veiled behind privilege and confidentiality claims. Whether these facts implicate or negate a *Martinez* claim remains to be seen.

The AEDPA bars a straightforward claim for ineffective assistance of counsel at a post-conviction hearing. *See* 28 U.S.C. § 2254(i). Nevertheless, *Martinez* permits a petitioner to assert that such ineffectiveness was "cause" for the procedural default of a claim that trial counsel was ineffective, and by this device excuse the procedural default that would ordinarily bar a federal court from considering a claim of ineffectiveness of trial counsel that was defaulted in state proceedings. *Martinez*, 566 U.S. at 9, 13-14. The habeas petition in this case did not raise a *Martinez* claim.

Both sides agree that if the petitioner wishes to pursue such a *Martinez* claim, his current counsel would have to withdraw. At a hearing on April 28, 2017 counsel conveyed to me that at a substantial part of the information needed to evaluate the

---

[1] Questions, as such, may presuppose facts, but implicature is ordinarily within the province of assertions, not questions.

3

possible *Martinez* claim is subject to the attorney-client privilege, the attorney work-product doctrine, or a duty to maintain confidentiality under Pa. R.P.C. 1.6.

By memorandum dated May 24, 2017 (Doc. No. 88), counsel for Mr. Keaton advised that Mr. Keaton, having considered the issues raised at the April 28, 2017 hearing, wished to waive any potential *Martinez* claim and proceed with his longstanding relationship with current counsel. Doc. No. 88, at 2-3. Counsel proposes that I either colloquy Mr. Keaton about the waiver, or appoint additional counsel for the sole purpose of advising him about the waiver. The Commonwealth advised me that they have elected not to submit a post-argument memorandum, but will rely on their positions as previously argued. Doc. No. 91.

### III. Discussion

There is no Sixth Amendment right to appointment of counsel in habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("our cases establish that the right to appointed counsel extends to the first appeal of right, and no further"); *Parham v. Johnson,* 126 F.3d 454, 456-57 (3d Cir. 1997) (holding that there is no constitutional right of counsel conferred upon indigent civil litigants). Mr. Keaton is no longer facing a death sentence in this case, and so he is not entitled to an attorney under 28 U.S.C. § 3006A. *See Harbison v. Bell*, 556 U.S. 180, 184–85 (2009). Rule 8(c) of the Rules Governing Section 2254 Proceedings provides that a magistrate judge must appoint counsel if an evidentiary hearing is necessary. *See U.S. v. Iasiello*, 166 F.3d 212, 213 (3d Cir. 1999) (interpreting the same rule in a 2255 proceeding). Rule 8(c) does not make provision for the appointment of additional conflict counsel, but neither does it exclude such a possibility.

4

In order to evaluate whether to accept a waiver of a potential conflict of interest, I must determine through a colloquy that the waiver is knowing, intelligent, and voluntary. *U.S. v. Fumo*, 504 F.Supp.2d 6, 30 (E.D.Pa. 2007). To do so, I must ensure that Mr. Keaton "understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel[.]" *U.S. v. Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978). An appropriate colloquy requires a detailed description of the nature of the conflict and of the potential pitfalls of proceeding with a conflicted attorney. *See U.S. v. Scarfo*, 980 F.Supp. 803, 808–11 (E.D.Pa. 1997). I must question Mr. Keaton "most explicitly" about the "nature of the conflict and [his] awareness of the conflict." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 139 (3d Cir. 1984). Ordinarily I must "conduct an evidentiary hearing or factual inquiry to determine whether disqualification is appropriate." *Id.* In this case I lack the detail that would make a colloquy effective. *See, e.g., Scarfo,* 980 F.Supp. at 808-11.

Before conducting a colloquy with Mr. Keaton or deciding whether to appoint conflict counsel, I will require counsel for Mr. Keaton to create and submit a privilege log. Such a log is a useful first step in deciding what information is privileged and what is not. *See In re Avandia Marketing, Sales Practices and Products Liability*, 2009 WL 4807253, at *1 (E.D.Pa. 2009); *Fourth Age Limited v. Warner Bros. Digital Distribution, Inc.*, 2014 WL 12584447, at *4 (C.D.Cal. 2014). As with any preliminary evidentiary issue, I must determine whether a privilege applies to specific evidence, and whether an exception excuses its application. *See* Fed. R. Evid. 104(a); *U.S. v. Zolin*, 491 U.S. 554, 565 (1989). Once I have determined which relevant facts are privileged and

which are not, I can proceed to assess the nature and extent of the attorney-client conflict in the light of available facts.

Absent these steps, a colloquy will be an exercise in "imparting vaguely contoured, abstract advice" that is unlikely to be effective in ensuring that a waiver is knowing, intelligent, and voluntary. *Dolan*, 570 F.2d at 1182 and n.8. Nor will preparation of a privilege log be unduly burdensome in this case. The universe of documents that pertain to this issue is likely to be small, and counsel is both skillful and familiar with the history of the case, having represented Mr. Keaton, with substantial success, for 17 years. Mr. Keaton's right to conflict-free counsel, his waiver of that right, and my colloquy all deserve to be grounded in the relevant facts.

## IV. Conclusion

For these reasons, I will issue an order requiring the petitioner's counsel to submit a privilege log under seal. I will deny the petitioner's motion (Doc. No. 80), without prejudice to the petitioner's right to seek additional relief after the privilege log has been submitted.

BY THE COURT:

_s/Richard A. Lloret_____
RICHARD A. LLORET
U.S. Magistrate Judge